L. S. AYRES & COMPANY *v.* HICKS.

[No. 27,632. Filed March 25, 1942. Rehearing denied April 28, 1942.]

88

*Fesler, Elam, Young & Fauvre,* of Indianapolis (*Homer Elliott,* of Martinsville, of counsel), for appellant.

*Barnes, Hickam, Pantzer & Boyd* and *Thomas M. Scanlon,* all of Indianapolis (*Silas C. Kivett,* of Martinsville, of counsel), for appellee.

SHAKE, C. J.—The appellee recovered a judgment against the appellant for personal injuries. The assigned errors relate to the overruling of the appellant's motion for a judgment on the interrogatories and the answers thereto and the motion for a new trial. Under the motion for a new trial it is charged that the verdict is not sustained by sufficient evidence; that it is contrary to law; that there was error in the giving and refusal of certain instructions; that appellee's counsel was guilty of misconduct; and that the damages are excessive.

John Hicks, the appellee, a six-year-old boy, visited the appellant's department store in company with his mother, who was engaged in shopping. While descending from the third floor on an escalator, the appellee fell at the second floor landing and some fingers of both

his hands were caught in the moving parts of the escalator at the place where it disappears into the floor.

The appellee's complaint contained five distinct charges of negligence, as follows:

"1. In operating an escalator so constructed as to leave sufficient space between said ribs, said comb-plate and the teeth thereof to permit the fingers of small children, including plaintiff, to become caught and wedged therein when said escalator could then and prior thereto have been so constructed as defendant knew or should have known with ribs so close together and passing between the teeth and under the comb-plate with so little space between that fingers of children could not have been entangled or wedged therein.

"2. In failing to have a proper guard placed over the teeth of said comb-plate and the openings between said teeth to prevent objects and particularly fingers and other parts of the body of passengers on said escalators which might be drawn therein from being caught therein.

"3. In failing to take proper steps to stop the movement of said escalator with reasonable promptness when it knew, or by exercise of reasonable care should have known, of plaintiff's position of peril. That the means taken by defendant, if any, with reference to safeguarding passengers upon said escalators by having employees in a position to observe the same and stop said operation in the event of an accident, and the facts with reference to the stopping of the escalator after plaintiff's said fall are unknown to plaintiff, but are fully known to the defendant.

"4. In failing to take proper steps for the immediate release of plaintiff from said escalator following said accident. That the means taken by defendant with reference to reversing such mechanism upon the happening of an accident and the means adopted by defendant with reference thereto after plaintiff's said fall are unknown to plaintiff, except as hereinbefore stated, but are fully known to defendant.

"5. In failing to equip said mechanism so that it could be instantly reversed at or near the point

of the accident in order to extricate therefrom persons who might become caught or entangled therein."

On review only the pleadings, the general verdict, and the interrogatories and answers will be considered in determining whether a judgment should have been entered on the answers to interrogatories.

The evidence actually introduced at the trial will not be considered, but the court will suppose any evidence that might properly have been introduced under the issues. 2 Watson's Works Practice, § 1903.

The jury found that the escalators with which the appellant's store was equipped were purchased and installed in 1934; that no escalator was made prior to the accident that was safer than the one in use; that it was not the practice of stores installing escalators to have an attendant after a year; that the escalator on which appellee was injured was equipped with switch buttons at each floor landing by which it could be stopped in about 2½ steps; that appellant had clerks working within 50 feet of the place where appellee was injured, all of whom had not been instructed how to stop the escalator; that the escalator was moving at the rate of 90 feet per minute; that appellee's fingers were caught in the mechanism practically as soon as he fell; that the escalator ran "approximately 70 steps (of 15 inches) or more" before it was stopped; that it was from 3 to 5 minutes after appellee was first injured before his fingers were released; and that the appellee's injuries were increased by the grinding effect on his fingers which continued until the escalator was stopped.

The appellant asserts that it affirmatively appears from the answers to the interrogatories that it was

not guilty of any act or omission of negligence charged in the complaint. The facts found by the jury conclusively establish that the appellant was not negligent with respect to the choice, construction, or manner of operating the escalator. This being true, there could have been no incidental duty on the appellant to anticipate an accident, to instruct its employees, or to keep someone in attendance when the machine was in operation. One is not bound to guard against a happening which there is no reason to anticipate or expect. *Parry Mfg. Co.* v. *Eaton* (1908), 41 Ind. App. 81, 83 N. E. 510. Having concluded that the appellant was not responsible for the appellee's initial injury, the question arises whether it may, nevertheless, be held liable for an aggravation of such injury, and, if so, under what circumstances.

It may be observed, on the outset, that there is no general duty to go to the rescue of a person who is in peril. So, in *Hurley, Adm.* v. *Eddingfield* (1901), 156 Ind. 416, 59 N. E. 1058, 83 Am. St. Rep. 198, 53 L. R. A. 135, it was held that a physician was not liable for failing without any reason to go to the aid of one who was violently ill and who died from want of medical attention which was otherwise unavailable. The effect of this rule was aptly illustrated by Carpenter, C. J., in *Buch* v. *Amory Manufacturing Co.* (1897), 69 N. H. 257, 260, 44 A. 809, 810, 76 Am. St. Rep. 163, 165, as follows:

"With purely moral obligations the law does not deal. For example, the priest and Levite who passed by on the other side were not, it is supposed, liable at law for the continued suffering of the man who fell among thieves, which they might and morally ought to have prevented or relieved."

There may be principles of social conduct so universally recognized as to be demanded that they be

observed as a legal duty, and the relationship of the parties may impose obligations that would not otherwise exist. Thus, it has been said that, under some circumstances, moral and humanitarian considerations may require one to render assistance to another who has been injured, even though the injury was not due to negligence on his part and may have been caused by the negligence of the injured person. Failure to render assistance in such a situation may constitute actionable negligence if the injury is aggravated through lack of due care. 38 Am. Jur. Negligence, § 16, p. 658, 69 L. R. A. 533. The case of *Depue* v. *Flatau* (1907), 100 Minn. 299, 111 N. W. 1, 8 L. R. A. (N. S.) 485, lends support to this rule. It was there held that one who invited into his house a cattle buyer who called to inspect cattle which were for sale owed him the duty, upon discovering that he had been taken severely ill, not to expose him to danger on a cold winter night by sending him away unattended while he was in a fainting and helpless condition.

After holding that a railroad company was liable for failing to provide medical and surgical assistance to an employee who was injured without its fault but who was rendered helpless, by reason of which the employee's injuries were aggravated, it was said with the subsequent approval of this court, in *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co.* (1915), 57 Ind. App. 644, 649, 650, 104 N. E. 866, 868, 106 N. E. 739:

> "In some jurisdictions the doctrine has been extended much further than we are required to go in deciding this case. It has been held to apply to cases where one party has been so injured as to render him helpless by an instrumentality under the control of another, even though no relation of master and servant, or carrier and passenger existed at the time. It has been said that the mere happening of an accident of this kind creates a

relation which gives rise to a legal duty to render such aid to the injured party as may be reasonably necessary to save his life, or to prevent a serious aggravation of his injuries, and that this subsequent duty does not depend upon the negligence of the one party, or the freedom of the other party from contributory negligence, but that it exists irrespective of any legal responsibility for the original injury."

From the above cases it may be deduced that there may be a legal obligation to take positive or affirmative steps to effect the rescue of a person who is helpless and in a situation of peril, when the one proceeded against is a master or an invitor or when the injury resulted from use of an instrumentality under the control of the defendant. Such an obligation may exist although the accident or original injury was caused by the negligence of the plaintiff or through that of a third person and without any fault on the part of the defendant. Other relationships may impose a like obligation, but it is not necessary to pursue that inquiry further at this time.

In the case at bar the appellee was an invitee and he received his initial injury in using an instrumentality provided by the appellant and under its control. Under the rule stated above and on the authority of the cases cited this was a sufficient relationship to impose a duty upon the appellant. Since the duty with which we are presently concerned arose after the appellee's initial injury occurred, the appellant cannot be charged with its anticipation or prevention but only with failure to exercise reasonable care to avoid aggravation. The measure of that duty is not unlike that imposed by the rule of the last clear chance or doctrine of discovered peril, though it should be observed that the last mentioned rule imposes a

negative rather than an affirmative obligation and does not depend upon the relationship of the parties. To invoke the application of the last clear chance as it has been defined in this State, the defendant must have had knowledge of the plaintiff's situation of peril and of his helpless condition and, thereafter, have failed to exercise reasonable care to avoid harming him. *Southern R. Co.* v. *Wahl* (1925), 196 Ind. 581, 149 N. E. 72. The same rule must be applied in the case at bar. The third charge of negligence already quoted invoked the application of this rule and, upon that theory, the facts found by the jury are not incompatible with the general verdict. There was, consequently, no error in overruling the appellant's motion for a judgment on the answers to the interrogatories.

In the sixth instruction tendered by the appellee and given by the court the jury was told that "In determining the amount of damages which you will award plaintiff, it is proper to consider every phase of his injuries, as charged in the complaint, and which you find have been established by a preponderance of the evidence." All of the appellee's injuries including those initially suffered and those which might be said to be the result of the appellant's negligence were charged in the complaint and the subject of the evidence. The above instruction is, therefore, erroneous. In no event could the appellant be held liable for injuries that were not the proximate result of its negligence. The apportionment of the damages under such circumstances has been recognized by the practice in this State. In *The Standard Oil Company* v. *Bowker* (1895), 141 Ind. 12, 17, 40 N. E. 128, 130, which was an action for personal injuries, we find the following language:

"It is argued further that the appellee, having disobeyed the instructions of his physician, in taking improper exercise, contributed to his diseased condition. While this may be true that fact would not deprive him of damages for the original injury, but would probably permit an inquiry as to the extent of the injury sustained alone from the fault of the appellant."

*The Louisville, New Albany and Chicago Railway Company* v. *Falvey* (1885), 104 Ind. 409, 424, 3 N. E. 389, 397, 4 N. E. 908, was a similar case to the one from which we have just quoted. In the latter case the following instruction was approved:

" 'It was the duty of the plaintiff to use ordinary care, judgment and diligence in securing medical or surgical aid after she received the injuries complained of, if any she received, and if you find from the evidence that after she received such injuries, if any she did receive, she failed to use such ordinary care, judgment and diligence in procuring timely medical or surgical aid; and if you further find from the evidence that, by reason of such failure, her condition is now different and worse than it would have been if she had used such ordinary care, judgment and diligence in the premises, then, if you find for the plaintiff, you should take this into account in making up your verdict, and should not allow her any damages for ailments and diseases, if any, that may have resulted from such failure.' "

While the above cases arose on factual situations different from the case at bar, the principles stated therein are applicable. Since the appellee was ▮ only entitled to recover for an aggravation of his injuries, the jury should have been limited and restricted in assessing the damages to the injuries that were the proximate result of the appellant's actionable negligence.

This opinion might be extended, but in view of the fact that a new trial will be ordered it is not deemed necessary or proper to say more. Both parties are represented by able counsel and the case was unusually well tried. It is unlikely that the alleged errors not discussed will recur.

The judgment is reversed with directions to sustain the appellant's motion for a new trial.

NOTE.—Reported in 40 N. E. (2d) 334.

### ON PETITION FOR REHEARING.

SHAKE, C. J.—The appellee's petition for rehearing challenges only that part of the foregoing opinion which holds that reversible error was committed in the giving of the appellee's instruction No. 6. It is urged that: (1) Any error in the giving of this instruction was waived if it was presented; (2) standing alone, the instruction is not erroneous; and (3) it is not erroneous when considered with instructions Nos. 7 and 8 tendered by the appellant and given to the jury.

As to the first point it may be observed that it affirmatively appears from the record and from the appellant's original brief that the giving of instruction No. 6 was one of the grounds of the motion for a new trial and that the overruling of this motion was duly assigned as error on appeal. The proposition supporting this assigned error was stated in the appellant's original brief as follows: "There was error in the sixth instruction requested by plaintiff and given, which instruction improperly included humiliation as an element of plaintiff's damages." This was followed by the citations of many authorities. The question arises then whether we went outside the briefs in concluding that instruction No. 6

was bad because it embraced improper elements of damages other than humiliation. While alleged errors not presented and discussed in the appellant's brief will be treated as waived, this court does not regard itself as required to accept or reject the specific reasons advanced by a litigant to sustain his contentions. *Keeshin Motor Express Co.* v. *Glassman* (1942), 219 Ind. 538, 38 N. E. (2d) 847. The practice rule to the effect that alleged errors, not specifically pointed out in the appellant's brief, will be treated as waived was not intended to circumscribe the reviewing tribunal. The purpose of the rule is to relieve the court of the burden of searching the record and briefing the case and to place that responsibility on the party asserting error. It will not be carried so far as to require the court to close its eyes to that which is apparent. To do so would not infrequently place us in the unhappy situation of lending tacit approval to an instruction palpably bad on its face, and this could only result in confusing the law and misleading the profession. In *Big Creek Stone Co. et al.* v. *Seward et al.* (1895), 144 Ind. 205, 210, 42 N. E. 464, 43 N. E. 5, it was observed in this connection that "If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court." In the instant case we have done nothing more than to state cogent reasons, not advanced by counsel, to sustain an assignment, properly made and presented, to the effect that reversible error was committed in the giving of the appellee's sixth instruction. It should be noted that the practice in this regard has been changed by Rule 1-7, not in effect at the time the case at bar was tried, which provides that no error with respect to the giving of instructions

shall be available as cause for a new trial or on appeal except upon the specific objections made before argument.

The appellee's instruction No. 6 was as follows:

"If, under the law and the evidence in this case, you find that the plaintiff is entitled to recover, it will then become your duty to fix or determine the amount of his damages. In determining the amount of damages which you will award plaintiff, it is proper to consider every phase of his injuries, as charged in the complaint, and which you find have been established by a preponderance of the evidence. You may consider the kind and character of his injuries, whether the same are temporary or permanent, any physical pain or mental suffering or humiliation which the plaintiff has suffered or will suffer in the future, if the same be shown by the evidence. It is also proper for you to consider, if shown by the evidence, the effect of the injuries which plaintiff has sustained upon his ability to earn money after he becomes 21 years of age from any proper business, calling, or profession, and the kind and character of work which plaintiff will be prevented from doing after becoming 21 years of age, as a result of his injuries, if shown by the evidence, and from a consideration of all the facts shown in evidence bearing upon said subject, it will then be your duty to award the plaintiff such sum as will fairly and fully compensate him for all his said injuries which you find from a preponderance of the evidence he has sustained, as charged in the complaint, as the direct and proximate result of any negligence of the defendant, which you find charged in the complaint and established by a preponderance of all the evidence in this case, not exceeding the sum demanded —$80,000.00."

In the second sentence of the above instruction the court advised the jury that, "In determining the amount of damages which you will award plaintiff, it is proper to consider every phase of his injuries, as charged in the complaint, and which you find have been established

by a preponderance of the evidence." All of the appellee's injuries, including those received before as well as after the alleged omissions of negligence upon which the appellee must rely as a basis of recovery, were described in the complaint and evidence. The part of the instruction quoted did not undertake to limit the appellee's damages to those proximately resulting from a violation of the duty resting on the appellant to exercise reasonable care to avoid an aggravation of the appellee's injuries. "The rule deducible from (the) cases is that where facts are allowed to go in evidence which furnish an incorrect basis for the assessment of damages, an instruction which directs the jury to determine from all the facts, or all the evidence, the amount of recovery, is erroneous." *Stewart* v. *Swartz* (1914), 57 Ind. App. 249, 253, 106 N. E. 719, 721. If the quoted sentence had been separately numbered and given as a complete instruction, it would clearly be erroneous.

The appellee contends, however, that the instruction is saved by the concluding part thereof wherein the jury was told that ". . . from a consideration of all the facts shown in evidence bearing upon said subject, it will then be your duty to award the plaintiff such sum as will fairly and fully compensate him for all his said injuries which you find from a preponderance of the evidence he has sustained, as charged in the complaint, as the direct and proximate result of any negligence of the defendant, which you find charged in the complaint and established by a preponderance of all the evidence in the case, not exceeding the sum demanded. . . ." The first quoted part of the instruction, though a misstatement of the law, is short, clear, and unambiguous, while the part last quoted is lengthy, involved, and dependent upon punctuation for its meaning. While a skilled grammarian

or a lawyer, experienced in determining the meaning of written instruments, might, perhaps, conclude after careful study that the latter part of the instruction sufficiently modified or amplified the former, this cannot be the test for determining whether a jury usually composed of laymen was correctly instructed as to the law. Bearing in mind the theory upon which the case was apparently tried, we cannot escape the conviction that if instruction No. 6 standing alone was not positively erroneous it was, nevertheless, so confusing and misleading that it ought not to have been given.

Relying upon the rule that instructions should be considered as a whole and that if as a whole they state the law correctly there is no reversible error even though a part of the instructions considered alone might be erroneous, the appellee urges that any error in instruction No. 6 was cured by the following instructions tendered by the appellant and given to the jury:

No. 7.
"Another charge of negligence in the complaint is failure to stop the escalator with reasonable promptness after the plaintiff's position of peril should have been known. The Court instructs you that before any verdict could be based on this charge it would have to appear that such delay in stopping the escalator was the proximate cause of the plaintiff's injury, and if you should believe from the evidence that the plaintiff was injured practically at the instant he fell down, and that his injuries were not materially increased by delay in stopping the escalator, then you would not be justified in basing any verdict against the defendant on this charge of negligence."

No. 8.
"If you should believe from the evidence that the defendant was guilty of some delay in stopping the escalator after the plaintiff fell, and that such delay somewhat increased the plaintiff's injuries, you could not base a verdict for the plaintiff on that

ground as to anything except the extent to which the injuries were thereby increased, and if the evidence does not establish that the delay did increase the injuries, you could not award anything to the plaintiff on account of such delay, even if you find that such delay existed."

An examination of the appellant's instructions Nos. 7 and 8 discloses that they relate to the subject of negligence rather than the measure of damages. Both deal with the appellant's duty to the appellee. Neither informs the jury as to the elements to be taken into consideration in assessing damages if it finds there was a violation of that duty. While these instructions go further than they should have gone with respect to the appellant's liability and authorize a recovery on grounds not recognized in the principal opinion, we cannot regard them as curing the error in the appellee's instruction No. 6.

The petition for rehearing is denied.

Roll, J., dissents.

NOTE.—Reported in 41 N. E. (2d) 195.

## DISSENTING OPINION

ROLL, J.—I am unable to agree with the majority opinion. Because of the far reaching results of the rules laid down in the majority opinion, I feel impelled to state my views on the subject.

It will be noted that in the original opinion, the court discussed the question raised by appellant's motion for judgment on the answers to the interrogatories. In discussing that question, the court set out the four separate acts of negligence charged in the complaint. It was there pointed out that no actionable negligence was proved as charged in the first and second charges, which charges had to do with the choice, construction,

or manner of operating the escalator. The third charge of negligence had reference to the delay of appellant in stopping the escalator after it knew of appellee's position. The majority opinion pointed out that, "the facts found by the jury conclusively establish that the appellant was not negligent with respect to the choice, construction, or manner of operating the escalator."

It is clearly made to appear that by the interrogatories submitted by the court and answered by the jury, that the jury appreciated the fact that appellant was not guilty of any acts of negligence which caused appellee's initial injury, as charged in the first and second specifications of negligence; and on the other hand the jury was of the opinion that appellee suffered injuries which were the result of appellant's negligence in failing to use due diligence to stop the escalator, after it had knowledge of appellee's condition, as charged in the third specification of negligence. This is all very definitely pointed out in the first opinion in this case.

It will also be noted that appellee, in his complaint, very definitely separated the initial injury from the subsequent injuries by the four separate charges of negligence. The evidence introduced at the trial also emphasized this separation of injuries, and this evidence was effective as disclosed by the answers to the interrogatories. But this is not all. Again this distinction between the initial injuries and the injuries sustained as a result of appellant's negligence in failing to stop the escalator after appellee's position of peril was known to it, was very clearly presented to the jury by instructions Nos. 7 and 8, tendered by appellant.

This brings us to the consideration of instruction No. 6, as discussed by the majority opinion on rehear-

ing. Before discussing the merit of instruction No. 6, it should be observed that appellant made one and only one objection to this instruction, namely: that said instruction, "improperly included humiliation as an element of damage."

The only points and authorities urged in appellant's original brief were directed to this single objection. The majority found that the instruction was not subject to the criticism made against it. Notwithstanding this fact, the majority of the court felt at liberty to reverse the judgment of the trial court upon grounds never urged either in its original brief or reply brief. The court cited only one authority for so doing, and that was the recent case of *Keeshin Motor Express Co.* v. *Glassman* (1942), 219 Ind. 538, 38 N. E. (2d) 847, in which opinion I did not concur. Neither did the court in the last cited case find any case to support it. Attorneys in that case as in this case were unable to find authority to support the proposition, and I have made diligent search on my own initiative and have been unable to find such a case. I do not think this practice should be followed, because, if this court is going to examine every instruction objected to by appellant for errors other than those pointed out in appellant's brief, then appellee must necessarily be put to the task of suggesting in his answer brief every possible objection that could be urged to the instruction, and to meet such possible objection. Otherwise he runs the risk of the court's reversing the case on a point never urged by appellant to the trial court or this court, and to which objection appellee has never had an opportunity to answer.

The general rule, as I understand it, is that all objections not specifically pointed out by appellant in his brief under points and authorities or discussed in

his argument, are considered waived, and that appellee in his answer brief has a right to assume that the court will so consider them. The only possible exception to this general rule is, that where there is a general assignment of error, and the error is so apparent and so palpably wrong, that there could be no serious disagreement about the matter, then, in my judgment, the court would be justified in taking notice of such error and reverse the case, even though appellant had not pointed out specifically the real error. For instance, if an instruction, unquestionably erroneous, is given and was objected to by appellant, and he properly saves the question in his motion for a new trial, but in his brief he relies upon some untenable objection, the court might very properly refuse to shut its eyes to the obviously erroneous instruction, and reverse the case. Appellee could not very well complain of such action by the court because he could not have sustained the instruction, had the proper error been pointed out by appellant in his brief. Consequently, he was not harmed by the action of the court. This court has even refused to go this far in some cases. In the case of *P., C., C. & St. L. R. W. Co.* v. *O'Brien* (1895), 142 Ind. 218, 219, 41 N. E. 528, the court said:

"The second paragraph of the complaint is fatally defective in its failure to state that the plaintiff was entitled to possession of the lots. The statute provides that: 'The plaintiff in his complaint shall state that he is entitled to possession of the premises, particularly describing them, the interest he claims therein, and that the defendant unlawfully keeps him out of possession.' Burns R. S. 1894, section 1066; R. S. 1881, section 1054; *Leary* v. *Langsdale*, 35 Ind. 74; *McCarnan* v. *Cochran*, 57 Ind. 166; *Vance* v. *Schroyer*, 77 Ind. 501; *Levi* v. *Engle, Admr.*, 91 Ind. 330; *Mansur* v. *Streight*, 103 Ind. 358; *Simmons* v. *Lindley*, 108 Ind. 297; *Miller* v. *Shriner*, 87 Ind. 141.

"Strong as these authorities are in support of the error assigned on the ruling, overruling the demurrer to the second paragraph of the complaint for want of sufficient facts, the appellant has waived it by the failure to discuss the same in its brief."

But quite a different situation arises, where the question involved is doubtful and questionable. Under such circumstances, I am not persuaded that this court should depart from the general rule and reverse the case on a point not raised by appellant in his brief, and on a point which appellee had no opportunity to be heard. But even had appellant properly questioned the sixth instruction in his brief, the question still remains, is the instruction erroneous, in the light of the facts presented in this case and as hereinbefore pointed out, and in the light of appellant's instructions Nos. 7 and 8.

The majority opinion says that instructions 7 and 8 relate to the subject of negligence rather than the measure of damages. I doubt if this assertion is accurate. Both the subject of negligence and damages are mentioned, but not the measure of damages. The measure of damages is set out in No. 6. It is obvious, however, that the court was attempting to get clearly in the minds of the jury that one of the acts of negligence alleged in the complaint was the failure to stop the escalator with reasonable promptness after the plaintiff's position of peril should have been known. The court then told the jury that if the plaintiff was injured when he fell, and that his injuries were not materially increased by delay in stopping the escalator, then it should not find a verdict for plaintiff on this charge of negligence.

By instruction No. 8, the court in effect told the jury that if it found that the defendant did delay in stopping the escalator after plaintiff fell, and that

the delay increased plaintiff's injuries, then it should award plaintiff damages for the increase only. It is difficult for me to conceive how a jury could have been more clearly instructed as to just what injuries the plaintiff was entitled to recover. If the jury was not confused as to what injuries it was measuring in damages, then instruction No. 6 was not erroneous. It is admitted by the majority opinion that the correct measure of damages was stated in instruction No. 6 but concluded that instruction No. 6 confused the jury as to the injury for which it was assessing damages. As heretofore pointed out, the initial injury suffered by the fall, was not the result of any fault of appellant, and the jury so found by its answers to the interrogatories. Evidence as to the initial injury was introduced. Also evidence of the increased injury was offered. Plaintiff offered evidence as to how much of his fingers was cut off by the initial injury, and then showed how much additional injury resulted by not stopping the escalator.

When instruction No. 6 is taken in connection with appellant's own instructions Nos. 7 and 8, and as applied to the facts of this case as they appear from the record, in my judgment instruction No. 6 is not erroneous.

For the reasons above set out, I am unable to concur in the majority opinion.

NOTE.—Reported in 41 N. E. (2d) 356.