The CITIZENS STATE BANK, as Guardian of Gary Purple, a minor, Plaintiff-Appellee,

v.

PENN CENTRAL TRANSPORTATION COMPANY, Defendant-Appellant.

The CITIZENS STATE BANK, as Guardian of Phyliis Carter, a minor, Plaintiff-Appellee,

v.

PENN CENTRAL TRANSPORTATION COMPANY, Defendant-Appellant.

Nos. 71–1079, 71–1080.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1972.

Decided June 19, 1972.

612

Jerdie D. Lewis, Terre Haute, Ind., for Terre Haute, Ind., of counsel.

Don P. Campbell, James R. Bunch, James B. Wallace, Covington, Ind., Hansford C. Mann, Terre Haute, Ind., Wallace, Wallace, Campbell & Bunch, Covington, Ind., Mann, Mann, Chaney, Johnson & Hicks, Terre Haute, Ind., for plaintiff-appellee.

Before KILEY and STEVENS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

KILEY, Circuit Judge.

A jury in this diversity case returned verdicts for $200,000 and $150,000 in favor of plaintiff suing as guardian for two minors—Gary Purple and Phyllis Carter—allegedly injured as a result of defendant Penn Central Transportation Company's (Railroad's) negligence in transporting an electric transformer for

---

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

General Electric (GE). The Railroad has appealed.[2] We affirm.

The transformer, weighing over 100,000 pounds, was being transported from GE's plant in Pittsfield, Massachusetts, to Flagstaff, Arizona. In Indiana, the car carrying the transformer derailed, causing derailment of another freight car which ran across and blocked a state highway on which plaintiff's minor wards were traveling by automobile. The automobile collided with the freight car, causing injuries to the minors. The suit before us followed, charging, so far as pertinent, that the Railroad's negligence in operating its train was the proximate cause of the minors' injuries. Plaintiff's theory was *res ipsa loquitur*.

Evidence at the trial showed that the transformer was loaded on, and bound to, the freight car directly after the locomotive, and that that car was the first to derail. There was also evidence that although GE represented to the Railroad that the transformer weighed 96,700 pounds, it actually weighed 117,473 pounds. Further testimony was that had GE correctly represented the weight of the transformer, the Railroad would have limited the speed of the train to 35 miles per hour instead of 49 miles per hour, and would have placed the transformer on a car immediately preceding the caboose so that excessive swaying might be observed.

The Railroad depended upon the foregoing evidence to prove its defense that the derailment was caused by GE's misrepresentation of the correct weight of the transformer, and not by any negligence of the Railroad. Its theory was that in view of the excessive weight of the transformer, an additional 20,000 pounds could result in a radical shift upward of the transformer's center of gravity and cause excessive swaying of the freight car carrying the transformer. The Railroad contended that GE's mis-representation prevented it from learning of the excess 20,000 pounds so that protective measures of observing the car, and slowing the speed of the train, could be taken.

### I.

At the close of plaintiff's case in chief, and with evidence of the misrepresentation, the loading of the transformer, and details of the derailment before the jury, the judge granted GE's motion for directed verdict. In explaining the ruling to the jury, the judge commented:

> . . . the variance in weight that you have heard so much about was perfectly immaterial to what happened, and would not, under the other testimony, have changed the way and manner of operating this train one particle.

The next morning defense attorney's motion for mistrial was denied. A colloquy between the judge and counsel ensued. The judge then told the jury, in regard to the prior ruling:

> You should not understand anything that I said to you at that time as meaning that the Railroad in its defense cannot continue to offer evidence on the subject of what in its opinion had to do with the derailment of the train.

The Railroad proceeded with evidence in support of its theory. Its General Manager, Ingold, again testified[3] that had GE correctly represented the weight, the derailment would not have occurred because the Railroad would have slowed the speed of the train and placed the transformer in front of the caboose.

The Railroad argues that the judge's original remarks "that the variance in weight . . . was . . . immaterial" were prejudicial since their effect was to remove from the jury con-

---

2. Plaintiff sued GE as well as the Railroad. However, at the close of plaintiff's case, GE's motion for directed verdict was sustained. Plaintiff has not cross-appealed from the judgment in favor of GE on the directed verdict.

3. Ingold had previously testified as an adverse witness for plaintiff.

sideration of GE's misrepresentation,[4] proof of which it claims was essential to overcome the inference, under Indiana law, of its negligence under the *res ipsa loquitur* doctrine. The Railroad also argues that the remarks were not cured by the judge's subsequent comments, and that accordingly the *motion for mistrial should have been granted.*[5]

We are not persuaded that the remarks prejudiced the Railroad's case. The remarks were limited to the judge's ruling on GE's motion for directed verdict, and were well within the district court's discretion to "clear away false issues" and to "comment on the evidence." See generally Wright, Federal Courts, § 94 at 416 2d Ed. (1970). The remarks effectually told the jury that GE was being directed out because—*vis-a-vis* the plaintiff—the Railroad could not shift to GE responsibility for weighing, loading and inspecting the transformer. They merely stated to the jury the substance of a later instruction (*infra*) on non-delegation of duty. And the judge's comments to the jury after the original remarks made it clear that the Railroad was not being prevented from offering a "satisfactory explanation" of the derailment, to rebut the inference of negligence created by plaintiff's prima facie case on the *res ipsa loquitur* theory.[6]

■ The agreement between GE and the Railroad in which GE assumed the obligation to weigh the transformer did not bind plaintiff. As between plaintiff and the Railroad, the latter could not rely upon the GE misrepresentation in defense of plaintiff's allegation of the Railroad's breach of duty. The district court correctly decided that the Railroad could not delegate to GE its duty to use reasonable care in operating its train so as not to proximately cause injury to per-

sons lawfully on a highway adjacent to the Railroad's right of way. See Prosser, Torts, 4th Ed. § 33 at 176–77.

The relevant evidence, between plaintiff and the Railroad, concerned whether the Railroad was imprudent in acting upon the claimed misrepresentation of GE and in not itself weighing the transformer—as it did after the derailment— and making its own decision as to what method of loading was necessary to prevent undue swaying of the freight car carrying the transformer; and whether the Railroad's future to act prudently was the proximate cause of the injuries to plaintiff's minor wards.

We hold that there is no merit in the Railroad's contention that the district court committed reversible error in denying its motion for mistrial based on the pertinent total comments of the court to the jury.

## II.

■ The court instructed the jury that the Railroad could not delegate its responsibility for "weighing, loading or inspecting" its freight. The Railroad argues only, on this point, that the instruction was not applicable since the shifting of responsibility was not in issue. We disagree.

After the district court directed GE from the case, the Railroad introduced testimony to support its theory of defense that had GE properly weighed, loaded and inspected the transformer and car, the derailment would not have occurred. That issue was in the case, and accordingly Bodine v. Justice, 119 Ind. App. 393, 85 N.E.2d 504 (1949), is inapposite.

■ Instruction No. 21—covering both minors' damages—included as one ele-

---

4. We see no reason for discussing cases cited by the Railroad deciding that comments of the court invaded the province of the jury. Suffice to say none of them has any bearing on the facts of the case before us.

5. The mistrial motion was not renewed after the court's additional comment. However, we deem renewal of the motion unnecessary under the circumstances.

6. The agreement was for billing purposes only.

ment of damage "lost time and earnings" from "inability" to work. Plaintiff concedes there is some merit in the Railroad's complaint about the instruction, since there is no evidence that minor Phyllis Carter lost any time or earnings from work as a result of the accident. The instruction, however, cautioned the jury to consider the evidence in determining whether the elements of damage were proven and to base the verdict "on that evidence and not on guess or speculation." In N. Y. Central R. R. Co. v. Knoll, Ind.App., 204 N.E.2d 220 (1965), one part of the instruction given on damages was "outside of the issues." That decision does not compel us to hold Instruction No. 21 reversibly erroneous. We think we can reasonably presume that the jury was aware of the lack of testimony that Phyllis Carter lost time or earnings from inability to work. Perhaps this is partly responsible for the $50,000 difference between her award and that of her fellow minor, Gary Purple.

We see no merit either in the claim that Instruction No. 23 was erroneously given because it invaded the jury's province. The instruction essentially told the jury that neither aggravated injuries, if any, caused by medical treatment to date nor pre-existing physical infirmity should be considered in reduction of damages, if any. We are not referred by either party to evidence that either minor had pre-existing injuries or that the parents of the minors had not prudently employed the doctors. We see no reason for the instruction but see no prejudice to the Railroad, assuming, but not deciding, that the instruction erroneously stated the law under L. S. Ayres & Co. v. Hicks, Ind., 40 N.E.2d 334 (1942).

We have discussed the points urged which we consider significant to our decision.

For the reasons given the judgments are affirmed.