**Delbert R. JOHNSON and Alice R. Johnson, Individually and as Parents and Natural Guardians of Jeffrey Johnson, Appellants–Plaintiffs Below,**

v.

**James PETTIGREW and Jenny Pettigrew, Appellees– Defendants Below.**

**No. 43A03–9111–CV–348.**

Court of Appeals of Indiana,
Third District.

July 16, 1992.

Ronald L. Sowers, Richard R. Bleeke, Sowers, Bleeke & Associates, Fort Wayne, for appellants.

Arthur G. Surguine, Jr., Carolyn M. Trier, Hunt, Suedhoff, Borrow & Eilbacher, Fort Wayne, for appellees.

STATON, Judge.

Delbert R. Johnson and Alice R. Johnson, individually and as parents of Jeffrey Johnson, appeal a summary judgment entered in favor of James and Jenny Pettigrew. The Johnsons raise four issues for our review, which we consolidate as two:

I. Whether the trial court erred in granting summary judgment dismissing their claim based upon premises liability.

II. Whether the Johnsons' complaint states a cause of action in negligence separate and distinct from the premises liability claim.

We affirm in part, and reverse in part.

On June 2, 1988, thirteen-year-old Jeffrey Johnson visited the Pettigrews' farm to see the Pettigrews' son, Joel. Jeff was a frequent visitor to the farm and sometimes helped with the various chores required to maintain the premises. On that day, Jeff, Joel, and Joel's cousin Chuck were asked to burn some debris which had accumulated in a shed on the farm. This proved to be a lengthy task, and after lunch, Joel's parents left the farm to run some errands, leaving the hired hand, Derrick Schinbeckler, and Joel's eighteen-year-old brother, Jason, in charge while they were gone. Derrick and Jason retired to the tool shed to change the tires on a truck, with the burn barrel in sight through the doors of the shed.

At first, the younger boys continued to burn the debris as directed, but they soon tired of the routine and decided to "mess around" with the fire. The boys took a lighted shop rag on a stick and started another fire out of sight of the tool shed, fueling it with boxes, wood and other debris. Then, with Chuck acting as a lookout to ensure that Jason and Derrick would not see, they filled a plastic jug partially full of gasoline which they obtained from a tank used for farm purposes. The boys then laid the jug on its side near the fire and took turns stomping on it, propelling the gasoline into the fire and causing small explosions. When Jeff took his turn to stomp on the jug, gasoline splattered onto his leg and he caught fire. Though the boys were able to put the fire out, Jeff sustained second and third-degree burns to his legs.

The Johnsons sued the Pettigrews, alleging negligence and premises liability. The trial court entered summary judgment in favor of the Pettigrews and the Johnsons appeal. On appeal from a summary judgment, we apply the same standard applicable in the trial court. *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 562. We must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 454. Rational assertions of fact and reasonable inferences therefrom are deemed to be true, and any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Malachowski, supra.* Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Kolczynski v. Maxton Motors, Inc.* (1989), Ind.App., 538 N.E.2d 275, 276, *transfer denied.*

## I.

### Premises Liability

Our analysis begins with the recent case of *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637. There, our supreme court undertook a comprehensive review of premises liability law in Indiana. The court noted that in the context of a negligence action, a person entering the land of another is owed a duty according to his status. *Id.* at 639. An entrant may fall into three classes: trespassers, licensees, and invitees. *Id.* No intricate analysis is required to determine Jeffrey Johnson's status—*Burrell* clearly states that social guests are invitees. *Id.* at 643.

The highest or most onerous duty is owed to an invitee. This duty is outlined in the Restatement (Second) of Torts § 343 (1965):

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

This duty was made applicable to social guests in *Burrell, supra.*

Our review of the law on invitees does not end here. This case is complicated by the fact that Jeff is a minor child.

Thus, two other Restatement provisions are relevant:

§ 343B. Child Licensees and Invitees.

In any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee.

§ 339. Artificial Conditions Highly Dangerous to Trespassing Children.

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Comment (c) to § 343B states:

Because of his status as a licensee or an invitee, the child may be entitled to greater protection than that afforded to a trespasser. This Section is intended to say only that he is entitled to at least as much.

As the comment implies, the duty in § 339 is limited, and some courts have extended greater protection to child invitees than that afforded to child trespassers. In an opinion decided before the advent of the second Restatement, our supreme court stated that an invitee is owed a duty of reasonable care to avoid the aggravation of an injury incurred on the landowner's premises through the fault of a third party. *L.S. Ayres & Co. v. Hicks* (1942), 220 Ind. 86, 40 N.E.2d 334, 337, *reh'g denied*, 220 Ind. 86, 41 N.E.2d 195. Moreover, in *Hobby Shops, Inc. v. Drudy* (1974), 161 Ind. App. 699, 317 N.E.2d 473, we stated that a host owed its thirteen-year-old business invitee a duty to make the premises reasonably safe. This duty included the obligation to exercise reasonable care to discover possibly dangerous conditions and take reasonable precautions to protect the invitee. *Id.* Similarly, our courts have extended greater protection to child licensees than to child trespassers, requiring the landowner to factor the child's youth and lack of experience in the assessment of the ability of a child to perceive and avoid danger. *Swanson v. Shroat* (1976), 169 Ind.App. 80, 345 N.E.2d 872, 877, *reh'g denied.* Thus, if the landowner can anticipate that a child will not perceive a danger obvious to adults, in the exercise of reasonable care he may be required to take additional precautions to protect his child licensees. *Id.; Woznizcka v. McKean* (1969), 144 Ind.App. 471, 247 N.E.2d 215, 222, *transfer denied.*

■ The interrelationship between the Restatement's provisions was examined in *Collier v. Necaise* (1988), Ala., 522 So.2d 275. In *Collier*, a child invitee assisting a shopkeeper restock a convenience store after a hurricane sustained injuries after stepping on a nail protruding from one of numerous boards strewn across the premises after the storm. In analyzing the duty owed to the child by the storekeeper, the Supreme Court of Alabama concluded that under Restatement (Second) of Torts § 343B, the landowner may owe a higher duty than that afforded to a child trespasser depending upon whether the child was a licensee or an invitee. The court held that the same standard which applies to an adult invitee applies to a child invitee. However, the court stated:

Nevertheless, an invitee's peculiar status as a child may alter the degree of "reasonable care and diligence" required on

the part of the occupier of land. Indeed, the court recognized this possibility in *City of Birmingham v. Whitfield*, 29 Ala.App. 454, 197 So. 666 (1940):

"[T]he degree of caution which is necessary to reach the required standard of reasonable care to be exercised may vary according to the capacity of the person with respect to whom such duty exists and ... those upon whom the duty rests of exercising reasonable care toward children must calculate upon the fact that children are expected to act according to their known characteristics and childish impulses."

29 Ala.App. at 458, 197 So. at 670. Surely, one may postulate many cases in which a child invitee might not be able to appreciate the perils presented by a dangerous condition that would appear "open and obvious" to an adult. The child's ignorance of the danger in such a case would trigger the duty to warn on the part of the occupier of the land, even though there might be no duty to warn an adult in the same position. Each of these cases must be examined individually, taking into account the child's age, experience, and maturity in determining whether the child invitee is "ignorant" of the danger so that the duty to warn remains extant. With these principles in mind, we find that our established standards of care with regard to invitees are well-suited to cases in which the invitee is a child.

522 So.2d at 278–79. Likewise, we find that the standard articulated in Restatement (Second) of Torts § 343 and recognized by our supreme court in *Burrell* is appropriate whether the invitee is a child or an adult. Accordingly, we hold that in cases involving child invitees, the proper standard is that set out in § 343, taking into account the abilities, age, experience, and maturity of the child invitee.

Yet another section of the Restatement has relevance under the particular facts of this case:

§ 343A. Known or Obvious Dangers.

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

\* \* \* \* \* \*

In *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, our supreme court explained the effect of the knowledge of the dangerous condition by the parties:

While the comparative knowledge of landowner and invitee is not a factor in assessing whether the duty exists, it is properly taken into consideration in determining whether such a duty was breached. Separate evidence of disparate knowledge is not required to prove the existence of duty. However, facts showing only that a landowner knows of a condition involving a risk of harm to an invitee, but could reasonably expect the invitee to discover, realize, and avoid such risk, may be insufficient to prove breach of the duty.

549 N.E.2d at 370.

Having reviewed the applicable law, we now turn to the facts of this case. The "condition" identified by the Johnsons is the unlocked gas pump on the Pettigrews' land. They allege that by allowing the gas pump, which was able to be locked, to remain unlocked while they left the premises, the Pettigrews failed to exercise reasonable care to protect Jeff against the danger of fire. The Johnsons insist that this case is similar to *Risk v. Schilling* (1991), Ind., 569 N.E.2d 646. In *Risk*, plaintiff Risk was a friend of defendant Schilling, and often found occasion to assist Schilling in restoring old tractors in his workshop. On the day in question, Risk visited the workshop and found Schilling using an acetylene torch. Soon after arriving, Risk noticed that sparks from the torch had alighted on a cardboard box, and the box had begun to smolder. As he was trying to put out the embers, Risk noticed a nearby plastic jug beginning to swell. He was unable to reach a place of safety before the jug exploded, spraying him with scalding liquid and causing severe burns. Our supreme

court reversed a directed verdict in favor of Schilling.

There is a crucial distinction between *Risk* and the present case—in *Risk*, the plaintiff had no knowledge of the dangerous condition and took no actions which placed him in danger. Here, the Johnsons testified that Jeff had been instructed regarding the dangers of fire, and had been warned of the perils of throwing gasoline into the fire. Record, p. 193. In Jeff Johnson's deposition, he testified that he was aware of the dangers of gasoline and fire:

Q Prior to this incident happening, Jeff, had you ever had any sort of instructions or training, either from your parents or school, about fires and fire safety?

A Some.

Q Okay, from your parents?

A Yes.

Q What sort of things had they told you, that you can remember?

A Not to play with fire.

Q Had they ever told you anything about gasoline?

A Yes.

Q What did they tell you about gasoline?

A That it could explode.

      \*     \*     \*

Q Had you ever, prior to June 2nd of 1988, thrown gasoline or any other kind of flammable liquid on fire?

A No.

Q Had you ever seen it done?

A I can't remember.

Q Had you ever seen it done on television or anything like that?

A Yes.

Q Did you know what it would do if gasoline were poured on an open flame?

A Yes.

      \*     \*     \*

Q You knew when you were doing this that it was something that was dangerous; right?

A Yes.

Q And you knew you were doing something that you shouldn't be doing?

A Yes.

Q And you knew you were doing something you could get in trouble for?

A Yes.

Q Why were you doing it?

A I guess at the time it was exciting.

Record, pp. 153; 155–56; 167. There is no factual dispute that Jeff knew what would happen when he threw gasoline on the fire; in fact, the boys testified that they engaged in this activity precisely to witness the explosive effect of the combination of gasoline and the open flame. The Johnsons argue, however, that while Jeff knew the dangers of fire and gasoline "in the abstract," since he had never actually thrown gasoline on a fire, he did not "fully" understand the risks presented by his actions. The Pettigrews correctly point out that there is nothing in the law which requires an individual to have experienced a dangerous situation firsthand in order to appreciate its dangers. It is not necessary for an individual to have experimented with dynamite in order to appreciate the dangers of explosives, nor is it necessary for a person to be hit by an automobile to appreciate the perils of a busy intersection. We would also note that on the day in question, Jeff had the benefit of watching his friends propel the gas into the fire and had taken at least one turn at this exercise himself before he was ultimately burned.

The law does not require the Pettigrews to protect Jeff Johnson from a danger on their premises of which he was fully aware, yet consciously disregarded. Restatement (Second) of Torts § 343A, *supra. Accord Collier, supra* (nine-year-old child had been warned by father of danger of protruding nails from boards; summary judgment for landowner affirmed in action for injuries sustained after stepping on nail protruding from board); *Sampson by Sampson v. Zimmerman* (1986), 151 Ill. App.3d 396, 104 Ill.Dec. 349, 502 N.E.2d 846 (four-year-old child was aware of the dangers of fire; summary judgment for homeowner affirmed in action for injuries sustained when child was burned by uncovered candle). Owners and occupiers of land are not insurers against the reckless-

ness of their *non sui juris* social guests. *Lowden by Lowden v. Lowden* (1986), Ind. App., 490 N.E.2d 1143, 1146, *transfer denied.* The trial court properly granted summary judgment on the Johnsons' premises liability claim.

## II.

### *Negligence*

The Johnsons argue that their complaint states a cause of action for negligent failure to supervise separate from the negligence claim based upon premises liability. They are correct. There is a "well-recognized duty in tort law that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a special responsibility recognized by the common law to supervise their charges." *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701, 706, *reh'g denied. See also Pettery v. Groff* (1986), Ind.App., 491 N.E.2d 583, 585. The duty is one to exercise ordinary care on behalf of the child in custody. *Pettery, supra.* The duty exists whether or not the supervising party has agreed to watch over the child for some form of compensation. 65 C.J.S. *Negligence* § 63(60) (1965). However, the caretaker is not an insurer of the safety of the child and has no duty to foresee and guard against every possible hazard. *Id.*

The record reveals that the Pettigrews, who assumed the supervision of Jeff Johnson, left the three boys in the custody of their employee and their son, who were instructed to change the tires on a truck in addition to watching over the boys as they burned debris. Under these facts, we cannot say as a matter of law that they did not breach their duty to exercise ordinary care on behalf of Jeff. Accordingly, we hold that the trial court erroneously granted summary judgment dismissing the Johnsons' complaint, as genuine issues of fact remained as to whether the Pettigrews were negligent for their failure to properly supervise Jeff Johnson.

Affirmed in part, and reversed in part.

BARTEAU, J., concurs.

GARRARD, J., concurs in part and dissents in part with separate opinion.

GARRARD, Judge, concurring in part and dissenting in part.

I concur with part I of the majority opinion but must dissent to part II.

While I do not disagree with the majority's statement of the duty imposed upon persons entrusted with the care of children, I do not find in the facts before the court a sufficient basis to establish that Pettigrews assumed that duty to Jeffrey Johnson on the day in question. Jeffrey went to Pettigrews uninvited that day to play with his friend. The boys played throughout the morning. At lunch Mr. and Mrs. Pettigrew discussed whether to send Jeffrey home because Joel had work to do in the afternoon. Mr. Pettigrew decided that Jeff might either go home or stay and assist Joel with his chores. This he communicated to Jeff. I do not find in such a casual arrangement an assumption of care for Jeffrey. While neither compensation nor any particular formality are necessary to impose the duty, the circumstances must be such that an entrustment is clear. Those circumstances do not exist here.

I would therefore affirm the judgment.