Alisha HARRADON and William Kenneth Jones, Jr., Individually and as parents of William Kenneth Jones, III, deceased, Appellants–Plaintiffs,

v.

Keith SCHLAMADINGER and Kathy Schlamadinger, Appellees–Defendants.

No. 75A03–0903–CV–114.

Court of Appeals of Indiana.

Sept. 17, 2009.

Edward L. Murphy, Jr., Kevin C. Rasp, Miller Murphy, LLP, Fort Wayne, IN,

Dale Starkes, Esq., Starkes Law Office, Winamac, IN, Attorneys for Appellants.

Rebecca J. Maas, Freedom V. Miller, Smith Fisher Maas & Howard, P.C., Indianapolis, IN, Attorneys for Appellees.

**OPINION**

MATHIAS, Judge.

Alisha Harradon and William Jones, Jr. (collectively "Parents") filed a complaint in Starke Circuit Court against Keith and Kathy Schlamadinger (collectively "the Schlamadingers") alleging that the Schlamadingers' negligence proximately caused the death of their infant child. The Schlamadingers filed a motion for summary judgment, which the trial court granted. Parents appeal and argue that the Schlamadingers owed a duty of reasonable care to the child, and that the question of whether the Schlamadingers breached that duty creates a genuine issue of material fact precluding the entry of summary judgment. Concluding that the Schlamadingers are entitled to judgment as a matter of law, we affirm.

### Facts and Procedural History

Alisha Harrandon ("Alisha") and William Jones, Jr. ("Billy") were the biological parents of a baby boy born on October 21, 2004. Alisha and Billy resided together and cared for their baby's needs. In January 2005, Alisha and Billy, who were both seventeen years old, argued, and Billy decided to go to his mother's home in Chicago.

On January 18, 2005, Billy's aunt, Kathy Schlamadinger ("Kathy"), decided to travel to Chicago to see her husband and son. Alisha accepted Kathy's offer to travel with her so that she and the baby could see Billy. The night before they left, Alisha and the baby stayed at the Schlamadingers' residence. Kathy told Alisha she

could sleep on the sofa, and Alisha slept on the sofa with the baby. Appellants' App. p. 37.

When Kathy, Alisha, and the baby arrived in Chicago, they had trouble finding Billy, who did not have a cell phone. When Kathy found Billy, he decided to return to Indiana with them. The group finally left the Chicago area around 11:30 p.m. Alisha and Billy asked Kathy to take them to Alisha's grandmother's house as they originally planned because the grandmother had a bassinet for the baby, but Kathy refused and advised that she was driving to her home instead because of the late hour, her difficulty seeing to drive safely at night, and her general tiredness.[1]

Kathy, Parents, and their baby returned to the Schlamadingers' residence around 2:00 a.m. and Kathy went to bed. Before retiring, Kathy told Alisha that she and Billy could sleep on the sofa and the loveseat, or that Alisha and the baby could sleep on the floor.[2] *Id.* at 33, 60. Alisha decided that she would sleep on the sofa with the baby. Billy was uncomfortable with this sleeping arrangement, and stated that he would stay up during the night to check on the baby. However, Billy was unable to stay awake. At some point during the early morning hours of January 19, 2005, the baby suffocated while sleeping with Alisha on the sofa, causing his death.

On January 16, 2007, Parents filed a complaint for wrongful death alleging that the Schlamadingers' negligent failure to provide appropriate sleeping accommodations for the Parents and their baby was the proximate cause of the baby's death. The Schlamadingers filed a motion for summary judgment on July 21, 2008. The trial court granted the Schlamadingers' motion on February 3, 2009, after entering the following findings:

1. The minor infant child was in the exclusive custody and control of his parents.

2. The [Parents] exercised total parental control over their minor infant child and had a duty, at all times that they exercised physical custody of the child, to provide for his safety.

3. There was nothing inherently dangerous about the [Schlamadingers'] house, couch, or floor, especially in light of the presence of the child's car seat; a viable and safe option in which the child could sleep.

4. The duty of the [Parents] to provide for the safety of their child cannot be abrogated and shifted to the [Schlamadingers].

5. If the [Schlamadingers] owed a duty to the child to provide a safe environment in which to sleep, there was no breach of that duty. Both the couch and the child's car seat were safe options

---

1. Kathy disputes this fact and in her deposition stated that she could not recall any discussion about taking Alisha and Billy to Alisha's grandmother's house. She stated she would have done so if they had asked. Appellant's App. p. 80. We accept the facts most favorable to Parents as the non-movants on appeal.

2. In her deposition, Kathy testified that she told Alisha that Alisha could sleep wherever she wanted and offered Alisha a bed in her spare bedroom. Kathy stated that Alisha told her that she was comfortable on the sofa and

wanted to watch television. Appellants' App. p. 76. On the night they returned from Chicago, Kathy testified that she offered Alisha and Billy the spare bedroom. She stated that when she went to bed Billy was playing with the baby. *Id.* at 80. Neither party presented evidence which would establish that Kathy saw or had specific knowledge that Alisha was sleeping on the couch with the baby at the time that Kathy retired to her own bed. Once again, we accept the facts most favorable to Parents as the non-movants.

made available for the child. The [Schlamadingers] did not require the child's mother to sleep on the couch. The mother could have slept elsewhere. When the mother chose to sleep on the couch with the infant, she created a dangerous condition where none had existed previously. The [Schlamadingers] did not owe a duty to the child to prevent the child's mother from choosing a sleeping option for herself that converted a safe environment into a dangerous environment for the child.

6. There is no genuine issue as to any material fact and the moving part is entitled to judgment as a matter of law.

7. The [Schlamadingers] Motion for Summary Judgment should be granted.

Appellants' App. pp. 6–7. The Parents now appeal.[3] Additional facts will be provided as necessary.

### Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no dispute and which may be determined as a matter of law. *Swift v. Speedway Superamerica, LLC,* 861 N.E.2d 1212, 1213 (Ind.Ct.App.2007), *trans. denied.* Our standard of review is the same as that of the trial court. *Id.* Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Naugle v. Beech Grove City Sch.,* 864 N.E.2d 1058, 1062 (Ind. 2007). For summary judgment purposes, a fact is "material" if it bears on ultimate resolution of relevant issues. *Graves v. Johnson,* 862 N.E.2d 716, 719 (Ind.Ct.App. 2007). In negligence cases, summary judgment is rarely appropriate because such cases are particularly fact sensitive and are governed by a standard of the objective reasonable person-one best applied by a jury after hearing all of the evidence. *Id.* (citing *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004)). Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Id.* The case before us is just such a case.

### Discussion and Decision

■ Parents first argue that the "sleeping arrangements offered by the Schlamadingers presented an unreasonable risk of harm to Baby William," and therefore, the Schlamadingers breached their duty to protect the baby from a dangerous condition on their property, which proximately caused the baby's death. Appellant's Br. at 17. The Schlamadingers respond that Parents have not alleged any facts that would establish that they breached a duty owed to the baby, and that the Schlamadingers are therefore entitled to judgment as a matter of law.

■ To prevail on a theory of negligence, the Parents must prove that 1) the Schlamadingers owed a duty to their child; 2) the Schlamadingers breached that duty; and 3) the child's death was proximately caused by the breach. *See Winchell v. Guy,* 857 N.E.2d 1024, 1026 (Ind.Ct.App. 2006). More specifically, Parents argue that the Schlamadingers owed a duty of care to the baby under the rubric of premises liability. *See Burrell v. Meads,* 569 N.E.2d 637 (Ind.1991).

■ The nature and extent of a landowner's duty to persons coming on the property is defined by the visitor's status as an invitee, a licensee, or a trespasser. *Rhoades v. Heritage Inv., LLC,* 839 N.E.2d 788, 791 (Ind.Ct.App.2005), *trans. denied.* The highest duty of care is that owed to an invitee; the duty to exercise

---

**3.** We held oral argument in this case on August 13, 2009.

reasonable care for the invitee's protection while he or she is on the premises. *Id.* In this case, the Schlamadingers invited Parents and the baby into their home, and therefore, all three were invitees. *See id.* at 792 (an invitee is a person who is invited to enter or to remain on another's land); *see also Burrell*, 569 N.E.2d at 643.[4]

As invitees, the scope of duty the Schlamadingers owed to the Parents and the baby was as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639–40 (quoting Restatement (Second) of Torts § 343 (1965)). It is important to note that Section 343 establishes three preconditions to the landowner's general responsibility for harm caused by a condition on her or his land. Even more importantly, these three preconditions are expressed in the conjunctive, requiring that all three exist before any liability may attach.

■ In this case, the injured invitee was a two-month-old baby. When the injured invitee is a child, we apply the standard set forth in Section 343, but also consider the child's abilities, age, experience, and matu-

rity. *See Johnson v. Pettigrew*, 595 N.E.2d 747, 751 (Ind.Ct.App.1992), *trans. denied.* In this regard, we note that the baby was entirely dependent on Parents for his care.

■ We next observe that on the date of the incident, Parents were minors also. Generally, the Schlamadingers have a duty to supervise minors entrusted to them. *See Davis v. LeCuyer*, 849 N.E.2d 750, 757 (Ind.Ct.App.2006), *trans. denied.* However, "[c]hildren over the age of 14, absent special circumstances, are chargeable with exercising the standard of care of an adult." *Penn Harris Madison School Corp. v. Howard*, 861 N.E.2d 1190, 1194 (Ind.2007) ("Howard was 17 years old at the time he was injured. As such, the law charged him with exercising the standard of care of an adult, not that of 'a person of like age.'") (citing *Creasy v. Rusk*, 730 N.E.2d 659, 662 (Ind.2000)).

Here, Parents were each seventeen-years-old, and therefore, they were charged with exercising the standard of care of adults. This is especially so because Parents had engaged in the adult activities of conceiving the child at issue and had exclusively cared for the child from its birth until its death. Appellant's App. pp. 25–26.

Next, we note Parents' admission that on the night of the baby's death, they exclusively cared for the baby, and they never placed the baby in Kathy's care. Appellant's App. pp. 33–34, 60–61. In *Kelly v. Ladywood Apartments*, 622 N.E.2d 1044 (Ind.Ct.App.1993), *trans. denied*, a child was injured while sledding on a hill owned by Ladywood Apartments. Our court concluded that Ladywood was entitled to summary judgment on the plain-

---

**4.** In *Burrell v. Meads*, 569 N.E.2d 637, 643 (Ind.1991), our supreme court ultimately determined that social guests should be classified as invitees because a landowner induces a social guest to enter his or her land "by express or reasonably implied invitation," which leads that guest to believe that the land has been prepared for his safety.

tiff's claim of attractive nuisance and we stated:

> In the present case, the rationale underpinning the attractive nuisance doctrine has no application to the undisputed facts of this case. The immediate presence of Kelly's father negates all of the policy reasons for shifting the duty to care for this child from his father to Ladywood. Kelly was brought to the hill by his father and supervised by his father. Under the attractive nuisance doctrine, the trespassing child must have failed, because of his youth, to discover the condition or realize the danger involved in going on to the defendant's property. 62 Am.Jur.2d Premises Liability § 326 (1990). As an adult, Kelly's father, not Ladywood, is charged with the care of his son and with understanding and appreciating the possible danger that snow may cover objects which would obstruct a sled's path. As a matter of law, the presence of Kelly's father precludes the application of the attractive nuisance doctrine.

*Id.* at 1049.

■ Although *Kelly* involved an attractive nuisance claim, we conclude that the same principles and rationale apply to the circumstances established in the case before us. Absent exigent circumstances that are not present here, public policy and common sense dictate that the duty to provide for a child's safety will usually rest with the child's parents while the child is in the parents' presence.

■ Parents next argue that the Schlamadingers owed a duty to the baby to exercise reasonable care to protect the baby from a condition on their property, namely the sofa where Mother slept with the baby and where the baby suffocated. *See* Restatement (Second) of Torts § 343(a). A sofa is a common household item which generally would not present an unreasonable risk of harm to a baby. *See e.g. Lowden v. Lowden,* 490 N.E.2d 1143, 1146–47 (Ind.Ct.App.1986), *trans. denied* (holding a cup of hot coffee is an ordinary household item, "almost any household object may become the instrumentality of injury to a small child, and we simply cannot consider all such objects to be inherently dangerous." Indiana law does not require landowners to be "absolute insurers of *non sui juris* child licensees on their property.").[5] Under the designated and undisputed evidence before us, and as a matter of law, the Schlamadingers' sofa was not a dangerous condition on their property within the meaning of Section 343.

■ As to Parents claim that Alisha's particular use of the sofa converted the sofa into a dangerous condition, the undisputed facts show that Parents exclusively cared for the baby while on the Schlamadingers' premises. Most importantly, Parents were very aware of the dangers of sleeping on a sofa with the baby. Appellants' App. pp. 27, 67. Billy testified that he told Alisha that it was not safe for her to sleep on the·sofa with the baby and "somebody should always be around if she's going to do it." *Id.* at 61.

■ The law does not require the Schlamadingers to protect a youthful invitee, such as the baby, from a danger on their premises which Parents themselves created, were fully aware of, and yet consciously disregarded. *See Johnson,* 595 N.E.2d at 752 (citing Restatement (Second) of Torts § 343A). Although the two-month-old baby could not himself be aware of the risk of sleeping on a sofa with his

---

5. As the Parents note in their brief, *Lowden* was decided prior to our supreme court's decision in *Burrell.*

mother, Parents were and chose to do so anyway. Importantly, there is also no evidence in the record that Kathy observed or had actual knowledge that Alisha was sleeping on the sofa with the baby when he suffocated. In her deposition, Kathy testified that she assumed the baby was sleeping in its car seat. Appellant's App. p. 81.

As a matter of law, under the facts and circumstances before us, the sofa was not a dangerous condition on the Schlamadingers' premises, and even if it could be found to be such, Parents knew and assumed the risk involved with Mother's decision to sleep with the baby on the sofa. Parents' designated evidence cannot surmount the conjunctive preconditions to liability set forth in Section 343. That same evidence leads us to conclude as a matter of law that the Schlamadingers did not breach the duty of reasonable care they owed to Parents' baby. Accordingly, we affirm the trial court's grant of summary judgment in favor of the Schlamadingers.

Affirmed.

RILEY, J., and KIRSCH, J., concur.