376 N.E.2d 1159 (1978)
PALACE BAR, INC., an Indiana Corporation, Herman Walters and Ruth Walters, d/b/a the Palace Bar and Nell Lynn, Appellants (Defendants below),
v.
Rosetta FEARNOT, As Surviving Spouse and Administratrix of the Estate of Garlen Fearnot, Deceased, Appellee (Plaintiff below).
No. 1-177A9.
Court of Appeals of Indiana, First District.
April 19, 1978.
Rehearings Denied May 16, 1978.
*1161 Eric A. Frey, Rosenfeld, Wolfe, Frey & Lowery, Terre Haute, Harold A. Harrell, Bloomington, Gus Sacopulos, Terre Haute, for appellants.
Walter E. Bravard, Jr., Dean E. Richards, Richards, Bennett & Bravard, Indianapolis, for appellee.
ROBERTSON, Judge.
This appeal is brought from an action by Rosetta Fearnot as surviving spouse and administratrix of the estate of Garlen Fearnot, deceased, against the defendants-appellants (defendants) Palace Bar, Inc., an Indiana Corporation, Herman Walters and Ruth Walters, d/b/a the Palace Bar, and Nell Lynn, for the wrongful death of Garlen Fearnot. We affirm, in part, and reverse, in part.
On January 3, 1974, Garlen Fearnot (Fearnot) entered the Palace Bar for the purpose of purchasing and being served alcoholic beverages. According to testimony, Fearnot had consumed two shots of whiskey but did not appear intoxicated, when, without saying anything, he abruptly left the bar and started toward the rear of the premises. Witnesses stated that Fearnot staggered as he walked, that he bumped *1162 against a booth, and that he stumbled against a pinball machine as he left the front room of the bar and continued, apparently, toward the rear door, which was the door he customarily used. Subsequently, the staggering Garlen Fearnot, according to conflicting testimony, either fell down the stairs or, while clutching for the handrail, slid to the landing below.
Herman Walters, the bartender and owner and manager of the Palace Bar, watched Fearnot as he left the bar and, thinking something might be amiss because of Fearnot's past history of heart problems, followed him. According to his testimony, Walters discovered Fearnot on the stair landing and attempted to be of assistance to Fearnot, who was slumped against the rail, by laying him down on the landing. Walters testified that he asked Fearnot if he could help, to which Fearnot replied that he would be all right and to just leave him alone. Walters went back to the front of the bar where he discussed the situation with other patrons. Walters and others apparently checked repeatedly on Fearnot's condition although no one called for medical assistance.
Thereafter, about an hour later, Walters apparently discovered that Fearnot had lost consciousness whereupon Walters called for the fire department's emergency medical unit, which was located across the alley from the Bar. The responding unit was unable to revive Fearnot, who was later pronounced dead at the scene by the Greene County Coroner.
While the Coroner ruled that Fearnot's death was the result of natural causes by way of a cerebral hemorrhage, Dr. James Benz, an Indianapolis pathologist who performed an autopsy, attributed death to heart disease. Although bruises were found on the body, there was no evidence to show that Fearnot died as a result of a fall or injury. Dr. Benz testified that he could not say for certain that Fearnot's life would have been saved had he been given treatment.
Evidence in the record shows that Fearnot experienced a variety of health problems and was, at the time of his death, on total, non-service connected disability from the Veterans Administration. According to testimony, Fearnot was known to have had other experiences wherein he had to lie down for several minutes before he was able to continue on, and he also had confided to others that he had a "bad ticker" or heart problems. Fearnot's widow testified, however, that she was unaware of her husband having any heart trouble.
The wrongful death suit subsequently brought by Mrs. Fearnot, as surviving spouse and administratrix of the estate of the deceased, resulted in a jury returning a verdict on April 16, 1976, in her favor in the amount of $93,000. Defendants bring this appeal following the overruling of their motion to correct errors on October 27, 1976.
Our examination of defendants' motion to correct errors and appellate brief indicates that defendants present the following issues for review:
1. Whether the trial court erred in failing to grant defendants' motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence;
2. Whether the trial court erred in failing to withdraw certain theories of recovery from consideration by the jury;
3. Whether the trial court erred in the giving of certain instructions;
4. Whether the trial court erred in refusing to give an instruction tendered by defendants;
5. Whether the trial court erred in giving to the jury verdict forms which permitted recovery against defendant Ruth Walters, a stockholder of Palace Bar, Inc.;
6. Whether the jury's verdict of $93,000 was excessive.

I.
Defendants' first assignment of error is based on the contention that Mrs. Fearnot did not prove any proximate relationship between the defendants' acts or omissions *1163 and any injuries allegedly resulting in Fearnot's death. We disagree.
Mrs. Fearnot's complaint consisted of four counts including negligence, nuisance, breach of warranty, and willful and wanton misconduct; however, our disposition of this issue requires that we consider only the count of negligence.
In a jury trial, a court should not direct a verdict for a defendant at the close of plaintiff's evidence unless there is a total absence of evidence or reasonable inference on at least one essential element of plaintiff's case. A directed verdict, moreover, is proper only when the evidence is without conflict and is susceptible of but one inference in favor of the moving party. Mamula v. Ford Motor Company (1971), 150 Ind. App. 179, 275 N.E.2d 849; Allied Fidelity Insurance Co. v. Lamb (1977), Ind. App., 361 N.E.2d 174.
Applying these principles to the negligence theory, we must see if there is evidence or reasonable inferences to support a finding of each element of negligence. We conclude that such evidence and inferences do exist in this case.
In Indiana, the three elements of negligence are:
1. a duty on the part of a defendant in relation to the plaintiff;
2. failure on the part of a defendant to conform its conduct to the requisite standard of care required by the relationship; and,
3. an injury to the plaintiff resulting from that failure.

Miller v. Griesel (1974), 261 Ind. 604, 308 N.E.2d 701; Elliott v. State (1976), Ind. App., 342 N.E.2d 674.
As to the existence of a duty owed one party by another, the nature of the relationship between those parties must be analyzed. In this case, clearly the relationship is that of a business invitor (defendants) to business invitee (decedent Fearnot) in that Fearnot entered upon the defendants' bar premises at the express or implied invitation of the owners or occupants to transact business to the mutual advantage of both Fearnot and the bar owners-occupants. See Verplank v. Commercial Bank of Crown Point (1969), 145 Ind. App. 324, 251 N.E.2d 52.
Our Supreme Court in Hammond v. Allegretti (1974), 262 Ind. 82, 311 N.E.2d 821, concluded that a landowner or occupier is under a duty to exercise reasonable care for the protection of invitees on the business premises. This duty includes ordinary reasonable care to maintain business premises in a reasonably safe condition, an obligation to exercise reasonable care to discover possibly dangerous conditions, and to take reasonable precautions to protect the invitee. This duty arises as a matter of law. The question whether the business invitor exercised the requisite degree of care is strictly for the trier of fact. See also Hobby Shop, Inc. v. Drudy (1974), Ind. App., 317 N.E.2d 473.
Defendants were obligated as a matter of law to exercise ordinary reasonable care for the safety of Fearnot while he was an invitee upon their business premises. Mrs. Fearnot argues that the defendants failed to exercise reasonable care in that: (1) they allowed an open stairway to exist close to the rear exit of the premises; (2) they failed to post a warning or notice of the existence of said staircase; and (3) they invited patrons to frequent the premises and thereby held the premises out to be safe when they were not.
The rule in Indiana is that where defendant's negligence is alleged to consist of several separate and distinct acts or omissions, it is sufficient for plaintiff to prove any one or more of such acts or omissions as being the negligence which caused the injury. City of Indianapolis v. Bates (1965), 137 Ind. App. 227, 205 N.E.2d 839. If several grounds of negligence are pleaded, judgment will be sustained if one of the grounds is established by the evidence. Smith v. Glesing (1969), 145 Ind. App. 11, 248 N.E.2d 366; Kampo Transit, Inc. v. Powers (1965), 138 Ind. App. 141, 211 N.E.2d 781.
*1164 Again we point out that the question whether the defendants, as business invitors, exercised the requisite reasonable care is strictly one for the trier of fact. We conclude that evidence as presented in the record and reasonable inferences therefrom are sufficient to support a finding of breach by defendants of the standard of reasonable care under the circumstances so as to permit the overruling of defendants' motions.
The evidence and inferences could support a finding of negligence by defendants in their failure to obtain medical assistance for Fearnot after his fall down defendants' stairs where no action to secure medical aid was taken for a period of over an hour after the defendants became aware of Fearnot's peril. Though when read literally, Mrs. Fearnot's complaint specifies the failure to obtain medical assistance as constituting willful and wanton misconduct, the jury would not have been required to find that the omission was willful and wanton misconduct in reaching its general verdict against the defendants. The jury could reasonably have concluded that the omission constituted negligence. We find support in the following statement from Indianapolis Transit System, Inc. v. Williams (1971), 148 Ind. App. 649, 658-659, 269 N.E.2d 543, 550:[1]
Whether the `issues' to be tried in any law suit are formed by the pleadings or in a pre-trial order, their function is merely to provide the parties and the court with an itinerary for the journey through the trial. Either party may timely demand strict adherence to the pre-determined route or, if deviation is permitted, the time necessary to prepare to meet the new issue. But when the trial has ended without objection as to the course it took, the evidence then controls. Neither pleadings, pre-trial orders, or `theories' postulated by either party should then operate to frustrate the trier of fact in finding the facts which that evidence (including all reasonable inferences the trier may draw therefrom) convinces him (whether he be a judge or a juror), by a preponderance thereof, is true or block him from awarding the relief, if any, which the rules of substantive law say those facts merit.
Our determination that a finding of negligence was reasonable in this case is supported, in our opinion, by the following discussion from the case of Tubbs v. Argus (1967), 140 Ind. App. 695, 698-700, 225 N.E.2d 841, 842-843, which sets forth the rule that the duty of reasonable care owed by a business invitor to present safe premises for invitees may include a duty of affirmative action to an invitee given certain compelling circumstances:
At common law, there is no general duty to aid a person who is in peril. L.S. Ayres & Company v. Hicks (1941), 220 Ind. 86, 40 N.E.2d 334; Hurley, Adm. v. Eddingfield (1900), 156 Ind. 416, 59 N.E. 1058, 53 L.R.A. 135. However, in L.S. Ayres & Company, supra, [220 Ind.] page 94, 40 N.E.2d page 337, the Supreme Court of Indiana held that "under some circumstances, moral and humanitarian considerations may require one to render assistance to another who has been injured, even though the injury was not due to negligence on his part and may have been caused by the negligence of the injured person. Failure to render assistance in such a situation may constitute actionable negligence if the injury is aggravated through lack of due care." Tippecanoe Loan, etc., Co. v. Cleveland, etc. R. Co., (1915), 57 Ind. App. 644, 104 N.E. 866, 106 N.E. 739; Depue v. Flatau (1907), 100 Minn. 299, 111 N.W. 1, 8 L.R.A.,N.S., 485.
In Tippecanoe Loan, etc., Co. v. Cleveland, etc. R. Co., supra, this court held that a railroad company was liable for failing to provide medical assistance to an employee who was injured through no fault of the railroad company, but who *1165 was rendered helpless and by reason of which the employee's injuries were aggravated.
The Supreme Court of Indiana in L.S. Ayres, supra, found the appellant liable for aggravation of injuries when it failed to extricate the appellee, a six year old boy, whose fingers were caught in the moving parts of an escalator, even though the jury conclusively established that the appellant was not negligent with respect to the choice, construction, or manner of operating the elevator. In so holding, the Supreme Court stated that it may be deduced from Tippecanoe Loan, etc., Co. v. Cleveland, etc. R. Co., supra, "that there may be a legal obligation to take positive or affirmative steps to effect the rescue of a person who is helpless and in a situation of peril, when the one proceeded against is a master or an invitor or when the injury resulted from use of an instrumentality under the control of the defendant."

The doctrine of law as set forth in Restatement (Second) of Torts, § 322, p. 133, adds credence to these two Indiana cases. "* * * If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of future harm, the actor is under a duty to exercise reasonable care to prevent such further harm." (Our emphasis).
According to our review of the record, this case does not present the very serious aggravation of injury problem that existed in the L.S. Ayres & Co. v. Hicks or Tippecanoe Loan v. Cleveland Railroad Co. cases. However, we believe that a reasonable inference might have been drawn by the jury that prompt medical attention could have saved Fearnot's life. Here, the defendant Herman Walters knew of Fearnot's past history of heart trouble and admitted that such information was uppermost in his mind when he went to check on Fearnot after Fearnot stumbled from the bar into the back room. Walters also testified that he decided not to move Fearnot because of warnings he had heard about "not moving heart patients". The jury, however, could reasonably have inferred that Walters knew the potential dangers of leaving Fearnot lying upon the stairs unattended. It was likewise within the prerogative of the jury to disregard or disbelieve Walters' self-serving testimony that Fearnot told Walters that he would be all right and to leave him alone. Assuming, arguendo, that Fearnot had made such statements to Walters, a jury might nonetheless reasonably conclude that under the circumstances where a man with a history of heart troubles had stumbled down stairs and languished for more than an hour that a reasonable man knowing of the fallen individual's health problems would have summoned medical assistance.
Finally, to sustain a verdict on any of the negligence allegations advanced, Mrs. Fearnot had the burden of proving that the injuries, in this case the death of Garlen Fearnot, resulted from the alleged misconduct or omissions on the part of defendants.
The plaintiff in a wrongful death action has the burden of proving that defendant's negligence proximately caused or contributed to the death of the decedent. Richmond Gas Corporation v. Reeves (1973), 158 Ind. App. 338, 302 N.E.2d 795.
The Indiana Appellate Court in New York Central Railroad Company v. Cavinder (1965), 141 Ind. App. 42, 211 N.E.2d 502, defined proximate causation as follows:
A proximate cause of an injury is the cause which sets in motion the chain of circumstances leading up to the injury and has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. * * *
The Indiana courts regard foreseeability of an injury as an essential element or fundamental test of proximate cause, and hold that negligence will not be deemed to have been the proximate cause of an injury so as to impose liability therefor unless the consequence was one which, in *1166 the light of attending circumstances, ought, could, or should reasonably have been foreseen or anticipated.

See also Galbreath v. Engineering Construction Corp. (1971), 149 Ind. App. 347, 273 N.E.2d 121.
In Smith v. Chesapeake and Ohio Railroad Company (1974), 160 Ind.App. 256, 268, 311 N.E.2d 462, 470, it was also stated:
The question of proximate cause is generally reserved for determination by the jury. Only in cases where the facts are undisputed as to allow only a single inference or conclusion to be drawn therefrom, may the question become a matter of law to be determined by the court. If there exists any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury. (Citations omitted).
Applying these principles to the case at bar, we observe that the medical testimony at trial was conflicting. The pathologist stated that Fearnot died of heart disease, while the County Coroner's verdict found that decedent died of a cerebral hemorrhage. Both the pathologist and coroner attributed death to natural causes and ruled out accidental death as a result of the fall down the stairway. The pathologist stated, however, that it was possible that the fall could have brought about a heart attack. The pathologist, in addition, indicated that it was "medically possible" that had Fearnot received emergency medical treatment immediately after his fall that his life might have been saved, adding that such a finding was speculative and could not be stated as a definite fact.
In view of the medical testimony and other evidence presented, we believe that the jury might have concluded through reasonable inference that Fearnot's death proximately resulted from any one of a number of possible causes, and it is our judgment, therefore, that the jury could reasonably have inferred that the failure to secure medical treatment under the circumstances, as demonstrated here, proximately resulted in Fearnot's death.
This factual situation presents a close case in terms of determining the proximate cause of the harm suffered, and surely it is in just such a case that a jury of peers performs its important and considered duty and function. Where the evidence is such that the minds of reasonable men might differ, then the question is for the jury, and the motions for directed verdict were properly denied.

II.
The defendants next urge that the trial court erred in failing to withdraw the issues of willful and wanton misconduct, breach of warranty, and nuisance from consideration by the jury. The defendants, in essence, maintain that the jury's general verdict for Mrs. Fearnot presupposes that the jury found against defendants upon all theories. We disagree.
Although we seriously question the applicability of the challenged theories to the factual setting of this litigation, we think that there are sufficient reasons to support our conclusion that no reversible error occurred.
Merely because a jury has before it more than one theory of recovery and returns a general verdict in favor of a plaintiff will not raise a presumption that a jury found against defendants upon all theories, as defendants urge. A reviewing court, moreover, cannot second-guess a jury returning a general verdict. We must look to see if the judgment can be sustained by evidence supportive of any of the proffered theories.
In Montgomery Ward & Co., Inc. v. Tackett (1975), Ind. App., 323 N.E.2d 242, the jury returned a general verdict awarding compensatory damages on a counterclaim which sounded in two paragraphs. This court, in an opinion by Judge Lybrook, held:
It is the duty of this court to sustain the decision of the trial court on any theory supported by the evidence. In re Estate of Barnett, supra, [159 Ind. App. 491, 307 N.E.2d 490]; Lindenborg v. M & L Builders and Brokers, Inc. (1973), [158 *1167 Ind. App. 311], 302 N.E.2d 816. * * * In resolving the question of the sufficiency of the evidence to sustain the verdict, we need only determine that the verdict is supported by sufficient evidence upon either of the two paragraphs. Ohio Finance Co. v. Berry (1941), 219 Ind. 94, 37 N.E.2d 2; Clarke Auto Co. v. Reynolds (1949), 119 Ind. App. 586, 88 N.E.2d 775. Ind. App., 323 N.E.2d at 247.
In this case, we are convinced that the finding of liability in favor of Mrs. Fearnot can be sustained under the negligence theory which we addressed in conjunction with the first issue. We deem it unnecessary, therefore, to repeat that discussion here.

III.
In their motion to correct errors, the defendants claim error in the trial court's giving of certain instructions. Defendants waived any error with respect to two instructions by failing to discuss the purported issues in their appellate brief. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). A third asserted instruction error involves an instruction which is recited and argued in defendants' brief and in the motion to correct errors but is not the instruction set forth in the trial record. The discrepancy has not been explained, and we must presume that the record is correct. Moreover, we are not convinced that the demands of AP. 8.3(A)(7) have been met. The confused nature of the issue presented by defendants is not justifiably susceptible to appellate review.

IV.
The defendants next assign error to the trial court's refusal to give Defendants' Tendered Instruction No. 8, which was as follows:
Plaintiff contends that defendants were guilty of negligence in failing to provide medical and other care to plaintiff's decedent thereby resulting in damages to her.
I instruct you, members of the jury, that plaintiff may not recover under this theory of her complaint unless you find that plaintiff has proved by a preponderance of the evidence that defendants had knowledge of the plaintiff's situation of peril and of his helpless condition, if any, and thereafter failed to exercise reasonable and ordinary care to prevent aggravation of his injuries, if any, or physical infirmities, if any.
Too, before defendants can be required to respond in damages on this theory, plaintiff must prove by a preponderance of the evidence that defendants failed to provide medical or other assistance to plaintiff's decedent which would have prevented harm to him.
The defendants were only under the duty to use reasonable and ordinary care, judgment and diligence in providing assistance or in securing medical or surgical aid for plaintiff's decedent such as a reasonably careful and prudent person would have under the same or like circumstances. In other words, under this theory of plaintiff's complaint, plaintiff would not be entitled to recover from the defendants if you find that prompt care and medical attention would not have prevented his death.
In essence, from defendants' objection at trial and from the argument in the brief, we think that the defendants contend that the giving of the tendered instruction was required in order to properly instruct the jury on an invitor's duty to provide emergency medical assistance to an invitee. They argue that their proferred instruction would have outlined that: defendants must have been aware of the medical emergency; that defendants had knowledge of the peril; that defendants had the opportunity to render such assistance; and, that such assistance would have prevented or minimized the decedent's injury. Moreover, the defendants maintain that the tendered instruction was patterned after the case of L.S. Ayres & Co. v. Hicks (1942), 220 Ind. 86, *1168 40 N.E.2d 334,[2] and that the instruction given by the court was inadequate insofar as setting forth the elements required to sustain a recovery under L.S. Ayres. We decline to agree.
The rule in Indiana is that there is no error in the refusal to give a tendered instruction where its subject matter is adequately covered by other instructions, even if the refused instruction appears more appropriate than the one given. Richmond Gas Corporation v. Reeves, supra; Link v. Sun Oil Co. (1974), 160 Ind. App. 310, 312 N.E.2d 126.
In this case, the language of Plaintiffs Instruction No. 8 as given by the trial court is almost verbatim the language the court used in the L.S. Ayres case.
You are instructed that there may be a legal obligation to take positive or affirmative steps to effect a rescue of a person who is helpless and in a situation of peril, when the one proceeded against is an invitor or when the injury resulted from the use of an instrumentality under the control of the defendants.
Such an obligation may exist although the accident or original injury was caused by the plaintiff or through that of a third person and without any fault on the part of the defendants.

See L.S. Ayres, supra, 220 Ind. at 95, 40 N.E.2d at 337.
Next, Plaintiff's Instruction No. 7 is a restatement of Indiana Pattern Jury Instruction No. 5.45 which sets forth the doctrine of last clear chance to which, again, the court in L.S. Ayres referred:
You are instructed that ordinarily any negligence on the part of the plaintiff which contributes to his own injury will be a complete defense when he sues a defendant for injuries to his person.
However, there is one exception to this rule known as the Last Clear Chance Doctrine in which the plaintiff's original negligence is excused or is held out to be the proximate cause of the plaintiff's injuries. The elements of a situation to which this doctrine applies are:
First: Both plaintiff and defendant are negligent;
Second: Plaintiff is in a position of peril from which he cannot extricate himself;
Third: Thereafter, the defendant discovers or becomes aware of the plaintiff's position of peril, and has the time and means to avoid the injury or damage but negligently fails to exercise ordinary care to do so; and
Fourth: Which failure proximately results in injury to plaintiff's person or property.
If you find from a consideration of all the evidence that these elements have been proved then the plaintiff's original negligence will not defeat a recovery.
Finally, the trial court also gave Defendants' Instruction No. 9 concerning the proximate cause of death:
I instruct you, members of the jury, that in the event you find that Garlen Fearnot died solely and proximately of natural causes and not by reason of any negligence of the defendants, then I instruct you that plaintiff may not recover damages of the defendants by reason of the death of plaintiff's decedent.
*1169 In our opinion, therefore, Plaintiff's Instructions Nos. 7 and 8, and Defendants' Instruction No. 9 as set out, supra, substantially covered the propositions of the duty owed by a business invitor to assist a helpless invitee which were propounded in defendants' tendered instruction.

V.
Defendants also maintain that the trial court erred in giving the jury verdict forms which permitted recovery against defendant Ruth Walters, a stockholder of Palace Bar, Inc.
The Palace Bar, Inc. is an Indiana Corporation owned by Herman and Ruth Walters, with Herman holding 51 per cent of the stock and Ruth having 49 per cent. Herman serves as president of the Corporation while Ruth is the secretary-treasurer; both serve as directors. According to the evidence at trial, the Walters share the management responsibilities equally and have equal authority as far as the operation of the tavern.
Mrs. Fearnot contends that any negligence on the part of Herman Walters in failing to obtain medical assistance for Garlen Fearnot can be imputed to Ruth Walters under a theory of joint enterprise, based upon the joint control, management, and operation of the Palace Bar for the pecuniary benefit of both of the Walters. Such reasoning ignores the existence of the Palace Bar, Inc. as a corporate entity. Since the existence of the corporation was not challenged below and the appellee expressly sued the corporation in the original action, we find that she is estopped to deny its existence at this late date.
Defendants persuasively argue that a shareholders' immunity from personal liability is based upon the concept that the corporation is a separate legal entity, distinct from its shareholders. Such immunity is a fundamental principle in the general law governing corporations and is one of the basic incentives for incorporating.
Indiana case law holds that a stockholder, who is not an officer of the corporation, is not personally liable for corporate torts; however, officers or directors of a corporation may be personally liable for such acts. Hartzler v. Goshen Churn & Ladder Co. (1914), 55 Ind. App. 455, 104 N.E. 34.
The general rule in Indiana in this area is succinctly stated in 6 I.L.E., Corporations § 157:
A director, officer, or agent is not liable for torts of the corporation or of other officers or agents merely because of his office. He is liable for torts in which he has participated or which he has authorized or directed. (Footnote citations omitted).[3]
In the case at bar, there is no showing that Ruth Walters was either at the Palace Bar or was aware of Garlen Fearnot's precarious situation during the period immediately prior to Fearnot's death. Liability for negligence can only follow where Ruth, in her duties as a corporate officer or director, had knowledge of the potential liability and danger to the injured party and failed to act or acted erroneously. Where, as here, the officer or director has no personal knowledge, has not taken an active part in the transaction, and is not charged as an officer or director with a duty to act, the court will not fix personal liability on the corporate officer or director. Therefore, we hold that verdict forms, which permitted recovery against Ruth Walters as an individual stockholder of the Palace Bar, Inc., were improperly submitted to the jury.

VI.
Finally, defendants urge that the verdict of the jury for $93,000 was excessive. We agree.
In Indiana, damages will only be considered excessive where they are so outrageous so as to indicate the presence of *1170 some passion, prejudice, or partiality. Ertel v. Radio Corporation of America (1976), Ind. App., 354 N.E.2d 783; Hidden Valley Lake, Inc. v. Kersey (1976), Ind. App., 348 N.E.2d 674; Ingmire v. Butts (1975), Ind. App., 334 N.E.2d 701. Reversal is not justified, however, if the amount of damages awarded is within the evidence before the court. Ingmire v. Butts, supra; Northern Indiana Public Service Co. v. Otis (1969), 145 Ind. App. 159, 250 N.E.2d 378.
The trial court's instruction on the measure of damages in a wrongful death action was virtually the same as the damages instruction upheld by this court in Richmond Gas Corporation v. Reeves, supra. The trial court directed the jury to consider: (1) the age of the deceased, his health and normal life expectancy; (2) his disposition and habits including whether he was temperate, industrious, frugal, or otherwise; (3) his occupation, opportunities and earning capacity; (4) funeral expenses; (5) the amount of money or other things of value furnished by deceased to his wife or the reasonable value of what deceased's wife may have received during his life, had he lived; and, (6) reasonable value of the loss of care, love, and affection sustained by decedent's wife.
The jury presumably considered the following evidence in determining damages.
1. According to the Vital Statistics United Life Tables stipulated to by the parties, a white male person of decedent's age of 52 would have a normal life expectancy of 22 years. Evidence at trial shows, however, that decedent Garlen Fearnot had a history of health problems including repeated hospitalization in Indianapolis. In 1952, the Veterans Administration (V.A.) gave Fearnot a 50 per cent disability rating and in 1971, the V.A. declared him 100 per cent permanently and totally disabled. Testimony was also introduced to show that Fearnot complained of headaches, dizziness, and heart problems, and had suffered repeated "spells" where he had to lie down for a period of time before he was able to regain enough strength to continue. In addition, Fearnot had a drinking problem which his wife testified was worsening, in that the decedent would begin drinking early in the morning and continue throughout the day. Autopsy results indicated severe arteriosclerotic heart disease.
2. Decedent had not worked for wages from August, 1970, until his death, although he did work as a farm laborer in the area, receiving compensation in the form of clothing, other incidentals, and apparently some money. Fearnot also bought and sold used farm equipment which he kept on one of the farms where he worked; the record, however, does not reflect the amount of income Fearnot received from such transactions. Fearnot did not file any income tax returns for three or four years prior to his death. Mrs. Fearnot testified that she and Garlen Fearnot always filed separate tax returns.
3. From 1971 until the time of his death, the decedent was drawing a 100 per cent non-service connected total disability pension from the V.A. of between $130 to $140 per month, which was to have increased to $154 about the time of his death. Mrs. Fearnot testified that her husband had a total annual income of between $2,500 and $3,000 from his earnings and his pension, although she never saw any money or checks that he earned. We conclude after a review of the record, however, that no evidence was presented to answer the question of whether or not Mrs. Fearnot was entitled to her husband's pension at his death.
4. Funeral expenses for Garlen Fearnot came to $1,357.
5. The evidence is at best meager as to whether any money or other things of value were furnished by Garlen Fearnot to Mrs. Fearnot during Fearnot's life, as she testified that she did not know for sure how much money he made and she managed her own employment earnings and filed her own tax returns.
It is the opinion of this court that the above considerations, when weighed in concert, cannot justify the jury's awarding of a $93,000 judgment.
*1171 To begin with, there is a paucity of documentary evidence as to Garlen Fearnot's annual income or receipt of other things of value from his work as a farm laborer, mechanic, and seller of farm machinery. Also, whether Mrs. Fearnot received any benefit from Fearnot's work or V.A. pension is left to conjecture, according to the trial record.
Moreover, even under a very liberal hypothetical calculation of damages, we conclude in view of the evidence that the award here is excessive. (Our hypothetical assumes, of course, that Mrs. Fearnot received some value from Fearnot's pension; we have already noted, however, that supportive evidence is lacking in this important matter.) For example, even if we assume that the decedent would have achieved a normal life expectancy, at best, his estimated lifetime pension benefits from the V.A. (based on the expected $154 figure) would equal $40,656 ($154/month X 12 months X 22 years). Cognizant of the testimony evidencing decedent's poor physical state and his drinking problems, we believe that $40,656 is a very liberal estimate. Deducting the $40,656 from the total award of $93,000 and crediting the funeral expenses of $1,357 leaves a figure of over $50,000.
In our opinion, it would be clearly excessive to award such an amount for the alleged loss of care, love, and affection given the extent of the conflicting evidence here as to decedent's employment, medical, and social history.
We summarize our decision in this case as follows:
1. It is the decision of this court that the judgment insofar as it relates to defendant Ruth Walters, as an individual, is reversed and remanded to the trial court with instructions that that portion of the present judgment which relates to Mrs. Walters as an individual be vacated and judgment entered, therefore, in her favor. 2. That portion of the judgment as to damages in the amount of $93,000 is also reversed and remanded, and the trial court is instructed to relitigate the issue of damages.
The judgment of the trial court is in all other respects, affirmed.
LOWDERMILK and LYBROOK, JJ., concur.
NOTES
[1] The Williams discussion was quoted with approval by our Supreme Court in Ayr-Way Stores, Inc. v. Chitwood (1973), 261 Ind. 86, 300 N.E.2d 335, a case in which the Court was presented with a somewhat analogous issue involving a trial court's granting of a plaintiff's motion to amend his complaint to conform to the evidence during trial.
[2] The court in L.S. Ayres held that there may be a legal obligation to take positive or affirmative steps to affect the rescue of a person who is helpless and in a situation of peril, when the one proceeded against is a master or an invitor or where the injury resulted from use of an instrumentality under the control of the defendant. Such an obligation, the court continued, may exist although the accident or original injury was caused by the negligence of the plaintiff since the duty arises after the initial injury to the appellee occurred, and is actionable only on the failure of the master or invitor to exercise reasonable care to avoid aggravation of his injuries. The court found this duty comparable to the duty imposed by the doctrine of last clear chance.

We have serious reservations in analogizing the factual circumstances and legal consequences thereto of L.S. Ayres and the case at bar; however, insofar as the parties have argued that their respective instructions set forth the requirements of the case, we will examine the instruction refused and those instructions given in light of the parties' application of L.S. Ayres.
[3] The Indiana view is consistent with the general rule of most jurisdictions. See Martin v. Wood, 400 F.2d 310 (3rd Cir.1968); Lemmons v. Zurick Insurance Co., 403 F.2d 512 (5th Cir.1968).